S.S.I. INVESTORS LIMITED, Respondent, v KOREA TUNGSTEN MINING CO., LTD., et al., Appellants, et al., Defendant.

First Department, April 21, 1981

### APPEARANCES OF COUNSEL

*Floyd G. Grossman* of counsel *(Dollinger, Gonski* and *Grossman,* attorneys), for respondent.

*Robert Griffith* of counsel *(Jeffrey Barist* and *James H. Schnare, II,* on the brief; *White & Case,* attorneys), for Nova-Park New York, Inc., N.V., appellant.

*Paul William Siegert* of counsel *(Siegert & Miller,* attorneys), for Korea Tungsten Mining Co., Ltd., appellant.

### OPINION OF THE COURT

Ross, J. P.

The core issue presented on this appeal is whether the offer of the plaintiff bidder, which was submitted in an

"alternative" form, constituted a firm offer which, it is alleged, was thereafter accepted by the seller. We have concluded that the purported bid as submitted was void from its inception and, therefore, there was no offer subject to acceptance.

Defendant Korea Tungsten Mining Company (KTM) was the owner of a certain parcel of real estate located in midtown Manhattan. KTM advertised the sale of this property in several prominent newspapers indicating that only "sealed written bids" would be accepted. The property would be awarded to the highest bidder and all bids were to be postmarked no later than November 30, 1979, with the opening of bids scheduled for one day later. The minimum upset price was $500,000.

A total of 14 bids were submitted. Defendant Nova-Park (NOVA), the successful bidder, bid $750,000, "on an all cash basis". Plaintiff submitted an "alternative" bid, as follows: "The total price of Five hundred and Fifty-six Thousand dollars ($556,000), and/or * * * one dollar ($1.00) more than the highest bidding price you have received for the above property."

After one adjournment, the bids were opened on December. 4, and both plaintiff and NOVA claimed that it was the successful bidder. Counsel for KTM was unsure as to who had submitted the highest bid. In any event, counsel made "no written memoranda or notations indicating any acceptance of either bid". While KTM weighed this dilemma, plaintiff and NOVA each forwarded a required $10,000 deposit to the attorney for KTM. A transmittal letter, dated December 5, 1979, accompanying plaintiff's deposit, indicated that these funds were to be held in escrow by KTM's counsel "pending the signing of a contract *which is satisfactory to both parties in their discretion*" (italics supplied). This letter also proposed that a contract be signed on or before December 31 and requested a return of the deposit if a contract was not signed.

On December 13, KTM's counsel rejected plaintiff's bid and returned the deposit. KTM determined that the "alternative bid did not constitute a firm specific bid at all, and therefore, is not the highest bid". Over two months later the property was sold to defendant NOVA.

Plaintiff then commenced this action for specific performance of the alleged contract of sale. Defendants in their answer asserted, *inter alia,* the affirmative defense of the Statute of Frauds. After completion of certain pretrial examinations, the defendants moved for summary judgment. Special Term concluded that issues of fact were presented and denied this motion. We do not concur in this determination. There are no substantial issues of fact requiring a trial.

Initially, plaintiff would have us conclude that on the day of the opening of the bids KTM accepted plaintiff's offer and, therefore, a binding and enforceable contract for the sale of this real property arose between these parties. The facts of this case do not support this assertion and we do not conclude that a contract was formed. The exchange of correspondence between these parties and their actions do not evidence a clear intent to enter into a contractual relationship. Immediately after the bids were opened, counsel for KTM stated that no written notations were made indicating acceptance of either bid. Thereafter, plaintiff's letter of transmittal, forwarded one day after the bids were opened, succinctly confirmed that no binding contract was entered into and that further negotiations were contemplated. As this court has said on a prior occasion when considering an action for the specific performance of a contract for a 99-year lease of real property: "[W]hen all the essential terms and conditions of an agreement have been set forth in informal written memoranda and all that remains is their translation into a more formal document, such an agreement will be capable of specific performance" *(Brause v Goldman,* 10 AD2d 328, 332, affd 9 NY2d 620).

Here, however, all the essential terms and conditions have not been memorialized in the informal writings between plaintiff and defendant KTM. Plaintiff's bid was not accepted and, thus, there was no mutual assent as to the purchase price for this real property. In this posture there certainly was not, nor could there have been, a complete meeting of the minds. "[W]hen the parties have clearly expressed an intention not to be bound until their preliminary negotiations have culminated in the execution of a formal contract, they cannot be held until that event has

occurred. The necessary finality of assent is lacking." *(Brause v Goldman, supra,* p 332.)

The cumulative effect of the correspondence and conduct of these parties can only be categorized as indicative of an intent to conduct further negotiations. Since no formal contract was subsequently entered into, no binding legal relationship was ever established.

Significantly, the actions of defendant KTM do not indicate a clear and unequivocal acceptance, as indeed they must, in order to bind it to the terms of the offer (9 NY Jur, Contracts, § 41). The solicitation of bids, through advertising and other media, constitutes merely a request for an offer. Once offers are tendered, the seller has the option to accept or reject any or all of them. As a leading commentator has aptly stated: "Often tenders or bids are advertised for by public corporations, municipalities * * * or private corporations. The rules governing such bidding are analogous to the rules governing auction sales. That is, an ordinary advertisement for bids or tenders is not itself an offer but the bid or tender is an offer which creates no right until accepted." (1 Williston, Contracts [3d ed], § 31.)

In a similar vein, Professor Corbin had this to say: "When an auctioneer presents an article for sale at auction and asks for bids, he is ordinarily not making an operative offer and creates no power of acceptance. Instead, he is asking for offers to be made to him; and the bids made in response thereto are themselves offers that can be revoked by the bidders prior to an acceptance by the auctioneer. This is true even though the seller or his representative has issued advertisements or made other statements that the article will be sold to the highest bidder, or is offered for sale to the highest bidder. Such statements are merely preliminary negotiation, not intended * * * to affect legal relations. When such is the case, the seller or his representative is as free to reject the bids, highest to lowest, as are the bidders to withdraw them * * *

"The acceptance of a bid at auction is commonly signified by the fall of the hammer or by the auctioneer's announcement 'Sold.' All that is necessary is that the auctioneer

shall express his intention to accept the bid, in any mode that is clear to the bidder or that he has reason to know and understand. After such an acceptance, the sale is consummated." (1 Corbin, Contracts, § 108, pp 481-482, 485.) On the opening of the bids the attorney for the corporate defendant, as its representative, made no written memoranda acknowledging acceptance of any one bid. Later actions of this attorney, however, quite definitely demonstrate that KTM rejected the bid of plaintiff. These actions, rather than demonstrating an acceptance of the offer as urged by plaintiff, manifest an unequivocal rejection thereof.

Based on the facts before us it cannot be said that these parties intended to be bound by the bid submitted on behalf of the plaintiff. Any such intention is solely that of the plaintiff and this unilateral, subjective manifestation cannot be elevated to the level of an enforceable contract. As Judge LEARNED HAND has stated: "A contract has, strictly speaking, nothing to do with the personal or individual intent of the parties. A contract is an obligation attached by mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *(Hotchkiss v National City Bank of N.Y.*, 200 F 287, 293, affd 201 F 664, affd 231 US 50.) The writings and conduct of these parties do not evidence a clear, present contractual intent. The necessary mutuality of assent, which promotes and fosters the formation of a binding contract, is lacking.

Under the circumstances, the assertions of the plaintiff may constitute, at best, an oral agreement for the sale of real property. Ordinarily, an agreement of this nature would not survive the defense of the Statute of Frauds. (General Obligations Law, § 5-703, subd 2.)

In an attempt, however, to remove the restrictions of this statute plaintiff argues that KTM's acceptance and retention of the $10,000 deposit for a period of nine days constituted sufficient part performance, to justify specific performance, of this oral contract. This part performance, however, must be "unequivocally referable" to the purported agreement in order to remove the proscription of

this statute and to create an enforceable oral agreement. In assessing what constitutes sufficient part performance, Judge BENJAMIN CARDOZO stated as follows: "Not every act of part performance will move a court of equity, though legal remedies are inadequate, to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. * * * What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done." *(Burns v McCormick,* 233 NY 230, 232.) The question becomes whether the payment of money, mentioned earlier, is "unequivocally referable" to the oral agreement. We are of the view that it is not. Where acts are explainable as preliminary steps which contemplate the formation of a contract in the future, such acts are insufficient to remove the bar of the Statute of Frauds *(Gracie Sq. Realty Corp. v Choice Realty Corp.,* 305 NY 271). The underlying purpose in submitting a bid is the anticipation of entering into a future contract with the seller. The tender of a deposit does not alter this concept. Both actions taken together, the submission of a bid coupled with a tender of a deposit, generally precede the formation of a contract. These actions are not "unequivocally referable" to the oral agreement and do not constitute such part performance to require a court of equity to grant specific performance of this contract.

In any event the Court of Appeals has previously held that the payment of the consideration, even in full, is not, standing alone, such part performance as would require the enforcement of an oral contract to sell realty. "[A]s said by a recent author, 'by an unbroken current of authorities, running through many years, it is settled too firmly for question that payment, even to the whole amount of the purchase money, is not to be deemed such part performance as to justify a court of equity in enforcing the contract.' (Browne on Statute of Frauds [5th ed.], § 461)" *(Cooley v Lobdell,* 153 NY 596, 601.) This court, when considering whether defendants should be required to ex-

ecute a six-year lease for real property, held that "payment of money is not enough, unless followed by other acts, as, for example, possession or improvements" *(Rosenwald v Goldfein*, 3 AD2d 206, 210). In *Rosenwald (supra)*, the payment of money, execution of a 30-day lease, entry into possession and obtaining a purchaser for the property was not sufficient part performance to render an oral contract enforceable.

More recently, two other appellate courts have reached similar conclusion. In *Osta v Jarrett* (27 AD2d 882), the Third Department was confronted with a situation where the plaintiff sought specific performance of an alleged agreement for the sale of real property. The parties had signed a binder agreement, a deposit in the form of a check was tendered and subsequently cashed and the plaintiff was permitted to enter into possession of the premises. Thereafter, the defendant refused to execute a formal agreement for the purchase and sale of this property. Under these circumstances, the court found that the facts were insufficient to take the case outside the Statute of Frauds and awarded summary judgment to the defendant.

In *Manyon v Graser* (66 AD2d 1012), the Fourth Department faced a fact pattern where defendant orally agreed to sell a parcel of land and cashed a check received as a deposit. Again these facts did not remove the case from the Statute of Frauds. In the appeal now before the court, the actions of defendant KTM cannot be equated to part performance of an oral contract for the sale of realty. The mere retention of the deposit in the absence of additional factors, substantial in nature, can in no manner be deemed part performance of this alleged contract.

As previously noted, a bid is nothing more than an offer. No legal rights are created until the offer has been accepted. Before an offer can be accepted, its terms must be "definite and certain". (9 NY Jur, Contracts, § 21.) The "alternative bid", as submitted by the plaintiff, failed to meet this criterion and, therefore, did not constitute a valid offer. The plaintiff's efforts to avoid the basic rules of offer and acceptance by use of the bid of one dollar over the highest bidder raises an apparently novel issue not previously encountered by this court.

The "alternative" bid submitted did not indicate which alternative was "greater" and this was pointed out in the letter of rejection sent to plaintiff. The bid, as submitted, simply did not constitute a firm offer. While plaintiff now asserts that it bid $750,001, it could have, had the circumstances been different, sought to lower its bid to $556,000.

The viability of the bid, as submitted, depended upon circumstances wholly independent from the actions of the offeror. This bid hinged upon other offers submitted. The plaintiff's offer was not capable of determination in any precise manner (see 1 Corbin, Contracts, § 97). The practice attempted to be engaged in by plaintiff is fraught with mischief. The touchstone of the bidding process is the competition for the property being offered for sale. It is this spirit which regulates and establishes the price to be paid. If the course as pursued by this plaintiff were authorized, this procedure would all but eliminate sealed competitive bidding. There would be nothing to prevent each successive offeror from submitting an alternative bid which was a minimal amount greater than the highest bid previously considered.

To permit such practice to prevail would cause havoc with all parts of public and private commerce. Almost all public, and many private, improvements are the product of the highest bidder process. This is a well-recognized technique and is in the best interest of all concerned. The purpose of competitive bidding is to give every qualified person an opportunity to bid upon the same material items, and on the same specifications and conditions. A bid is an offer to perform a contract at a certain price. The plaintiff's attempt to circumvent this established practice will not be countenanced.

Accordingly, the order of the Supreme Court, New York County (SCHWARTZ, J.), entered on October 1, 1980, which denied defendant's motion for summary judgment, should be reversed, on the law, with costs, and the motion for summary judgment dismissing the complaint, should be granted.

CARRO, LUPIANO, SILVERMAN, and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on October 1, 1980, reversed, on the law, and the motion for summary judgment dismissing the complaint granted. Appellants shall recover of respondent one bill of $75 costs and disbursements of these appeals.