IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF DAVID D. GARDNER, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1987—Decided March 13, 1987.

Before Judges FURMAN, DREIER and STERN.

*Frederick J. Dennehy* argued the cause for appellants (*Wilentz, Goldman & Spitzer,* attorneys; *Frank M. Ciuffani and Frederick J. Dennehy,* of counsel; *Frederick J. Dennehy,* on the brief).

*William C. Moran* argued the cause for respondents Dorothy Van Aller, Phoebe Black and Priscilla Wilson (*Huff, Moran & Balint,* attorneys; *David E. Orron* on the brief).

*Dale Elizabeth Console* argued the cause for respondent First Fidelity Bank (*Jamieson, Moore, Peskin & Spicer; Dale Elizabeth Console,* on the brief).

*Paul A. DeSarno* argued the cause for respondent Michael F. Padula, Jr. (*Toolan, Abbott & Domenichetti,* attorneys; *Paul A. DeSarno,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Applicants for intervention, Sam Juffe and Irv Cyzner ("applicants"), have appealed from an order of the Law Division, Probate Part, denying them intervention in a will contest proceeding. Applicants are the assignees of the proponent of the will, Michael F. Padula, Jr., the devisee of a 100 acre farm in Hamilton Township, Mercer County. The caveators are Dorothy Van Aller, Priscilla Wilson and Phoebe Black, sisters of the decedent, David D. Gardner.

The applicants, interested in purchasing the farm in order to develop the land, approached Padula who indicated no desire to farm or even invest in the land and who had insufficient

financial ability to defend the then expected will contest action. On June 18, 1984, Padula executed and delivered to the applicants a handwritten assignment of "all my rights in connection with any lawsuits that may arise from my inheritance of a farm ... in the Township of Hamilton." He further agreed by the document to cooperate with the applicants in the suit so that they could "obtain clear title to said farm" and defend Padula's interests in the farm. The applicants agreed to defend Padula's title interests so that he could convey the farm to them and further promised to advance Padula $3,500 and to rent a new car for him until the title was cleared. There were additional provisions in the agreement concerning the purchase price of the farm, specifically setting a $500 per acre price in the event the estate action were settled by a division of the land. An addendum to the agreement provided that the applicants would attempt to obtain for Padula a caretaker fee of $400 per week from the estate and in any event would pay him up to $150 per week towards the $400 per week fee.

Two weeks later a formal contract of sale was entered into between Padula and the applicants. The purchase price was established at $500,000, with the seller taking back a five-year, nine percent mortgage, with a release provision at $3,500 per acre. The written contract further incorporated the $150 per week payment provided in the earlier handwritten agreement and the lease of the automobile. The parties agreed to select joint counsel to represent their interests in the anticipated will contest proceedings [1], and agreed that applicants had the right "to take any and all appeals" from an adverse probate decision. The purchase price of $500,000 is acknowledged to have been below the market value of the farm at the time of the agreement.

---

[1] Counsel retained jointly by Padula and the applicants was disqualified by the trial judge, noting the potential conflict of interests of the parties. This conflict, although initially disclaimed by the applicants and Padula, became apparent during the progress of the proceedings, indicating the wisdom of the disqualification order entered March 1985.

But for purpose of the application to intervene we must assume that both the applicants and Padula agreed to a price that took into account the uncertainty of Padula's ownership and his right to convey his interests, the circumstances of the expected litigation, the weekly support payments, the car rental and other considerations to Padula evident in the agreements of the parties.

After the caveators had completed their discovery, the applicants moved for leave to intervene in the probate proceedings. On June 27, 1985 the trial judge denied the applicants' motions apparently on the grounds that whatever interest, if any, they had in the litigation would be adequately represented by Padula, although these reasons for denial of intervention at that time were not stated on the record.

According to the applicants' certifications to the trial judge, on March 5, 1986 Padula informed the applicants that he considered himself not bound by the agreements and ... free to settle the litigation on terms which, though favorable to himself could destroy our rights and interests in the Farm under the terms of the agreement.

The applicants then moved for an order restraining Padula from implementing any settlement, arguing that under their contract Padula had no right to settle the will contest without their consent[2].

The trial judge found that Padula had "no right to sell the land" because he did not own it, so that the contract between him and the applicants was a "nullity." He thus denied their request for a restraining order, finding they had "no right in the farm," and were not contract purchasers. The trial judge specifically determined that, whatever the outcome of the will contest, no party would receive title to the land since the assets of the Gardner estate were insufficient to pay the debts and that, under court order, the land was to be sold. The court

---

[2]The agreement gave the applicants the right to "institute and prosecute such legal or equitable actions as may be available to [applicants] in order to enforce [Padula's] obligations under this Contract of Sale."

reasoned that only if Padula prevailed in the will contest would he receive his share of the proceeds of the sale; since the contract between him and the applicants was contingent upon Padula's receiving title to the land, it had failed by the non-occurrence of a condition precedent[3].

The applicants filed a second notice of motion for leave to intervene after being informed that Padula was about to consummate settlement of the probate action under terms whereby he would receive cash and relinquish his rights to the farm. The applicants certified to the trial judge that they understood that the executor was to sell the farm with Padula receiving one-half of the net estate and the caveators the other half. The judge denied this motion on the same basis as the earlier motions, stating that with the pendency of the other law suit "the effort of the movants to assert those claims by intervention in the probate case is patently improper," and reiterating his earlier rulings. Applicants have appealed from this second order denying intervention.

We note initially that the reapplication for intervention raised different issues than the initial application. At the time of the first application the applicants knew only of a *potential* conflict between Padula's position and theirs. In support of the applicants, Padula affirmatively represented at that time that he sought enforcement of the assignment. At the time of their second application for intervention the applicants demonstrated an *actual* conflict, since the settlement then proposed by Padula would, in effect, have extinguished their rights[4].

---

[3]Following this denial the applicants commenced a separate contract action against Padula, the caveators and the executor. This action is still pending.

[4]We have been informed that since the order denying intervention the *lis pendens* previously filed by the caveators has been discharged in the parallel contract action, and that Padula and the caveators have settled the probate action by agreeing to withdraw the will from probate and jointly market the land.

The applicants have raised three points on this appeal. First, that they should have been permitted to intervene; second, their application was timely; and, third, that the settlement entered into between the caveators and Padula is void as against public policy and should be set aside. Since we agree with the applicants' first two points, their third point need not be considered.

*R.* 4:33–1 provides for intervention as of right in pending litigation

> ... if the applicant claims an interest relating to the property or transaction which is subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

There is no question that this rule is equally applicable to a probate action, since *R.* 4:84–1(c) provides that "persons in interest may, on motion, intervene" in a disputed probate matter.

So long as Padula continued to assert the position defending the will which devised the property to him, the interests of Padula and the applicants were such that Padula could arguably have been held to adequately represent the applicants' interests. But when the trial judge first noted the potential conflict of interest at the time the joint representation was enjoined, he should have been attuned to the potential problem with the adequacy of Padula's representation of both his and the applicants' interests. So long as there arose no actual divergence of interests, there was no absolute necessity for intervention. Nevertheless, since at the time of the initial application the conflict was apparent, the applicants' rights were deserving of separate representation in the probate proceedings, and the better practice would have been to permit intervention in this type of proceeding.

The trial judge, reasoning that the contract was a "nullity" since the property was to be sold to pay debts, failed to consider that the applicants, unlike Padula, had sufficient as-

sets and indicated their intent to pay the estate debts and thus preserve their rights to obtain a transfer of the farm. If the assignment from Padula was valid, applicants would have been the real parties in interest and consideration should have been given to their right to continue to prosecute the probate action in their own names. *Cf. R.* 4:26–1. We must, therefore, examine whether the devisee under a contested will may validly assign his interests and whether the assignees as opposed to the assignor may advance that interest in a probate proceeding. For the purpose of this discussion, however, we will not consider the factual issues giving rise to the assignment, but only the legal ramifications of the assignment, if enforceable.

It is clear that title to real estate vests in a devisee upon the testator's death, "even before admission of the will to probate." *Montclair Nat'l. Bank & Trust Co. v. Seton Hall College of Medicine,* 96 *N.J.Super.* 428, 434 (App.Div.), certif. den. 50 *N.J.* 301 (1967). Therefore, upon Gardner's death, Padula acquired a vested interest in the farm, subject to divestment should the will under which he claimed his interest not be admitted to probate.

In this case there was a further specific assignment of the right to prosecute the probate proceeding, a chose in action made specifically assignable under *N.J.S.A.* 2A:25–1 [5]. An analogy may be drawn between the assignee of the devisee in this case and a judgment creditor of a devisee levying upon the interest and then pursuing the claim in the estate proceedings.

---

[5]Had the assignment been made prior to Gardner's death, the interest would have been of a mere expectancy or possibility of inheritance. As such it would not have been assignable at law, but would have been recognized in equity as a valid assignment, enforceable when the expectancy or possibility became a vested interest. *Fidelity Union Trust Co. v. Reeves,* 96 *N.J.Eq.* 490, 491 (Ch. 1924), aff'd 98 *N.J.Eq.* 412 (E. & A. 1925); *Lena v. Yannelli,* 78 *N.J.Super.* 257, 260 (Ch.Div.1963). The applicants' interest in the case before us is stronger than that of an expectancy, since the assignment was not made during Gardner's lifetime, but at a time when Padula's interest had vested. *Cf. N.J.S.A.* 46:3–7.

Relying upon the general rule that "all persons who might be injured by admitting a will or codicil to probate, may caveat against it," the court in *In re Van Doren*, 119 *N.J.Eq.* 80, 81 (Prerog.1935), determined that a judgment creditor of an heir-at-law could file a caveat against the will which would have prevented the debtor from receiving the property by descent. *See also In re Sycle*, 16 *N.J.Misc.* 23 (Orph.Ct.1937), holding that a levying judgment creditor of a distributee of an estate can compel the administrator to file an accounting. It thus appears that there was no procedural impediment to the applicants' intervention as parties plaintiff, if it were determined that they held a valid assignment.

An additional basis for the denial of the applicants' second motion for intervention was the rejection of their two prior similar motions, the first for intervention and the second for the restraining order. The trial judge faulted applicants for not appealing the initial denials, but rather for seeking intervention again after the settlement of the case was reported. We note no laxity on the part of the applicants in asserting their rights. As noted earlier, their need for intervention was not as compelling at the time of the first intervention motion or at the time of the restraining order. At the time of the first intervention motion Padula reaffirmed the validity of the contract and his intention to enforce his rights to the estate. When their restraining order was denied, the applicants commenced an action for breach of contract, hoping to forestall any action in derogation of their rights as assignees. When Padula took affirmative steps that would have terminated applicants' rights to the property, they immediately reapplied for intervention. This was not a motion for reconsideration; rather it was a motion based upon changed circumstances. We see no abandonment of the applicants' interests, laches nor other untimely action.

The issue remains as to what action should be taken at this stage in the proceedings. At oral argument it was reported to

us that the real estate has not yet been sold. Since it is apparent from the present state of the record that the applicants should have been permitted to intervene prior to any settlement of the action so that they could determine whether to pay the estate debts and obtain a transfer of the property if the will is upheld, they should not be prejudiced by the unilateral actions of those holding adverse interests. It has been argued to us that the law favors settlements and that we, therefore, should not upset a settlement entered into between Padula and the caveators. The law does not favor settlements in derogation of the rights of unrepresented potential parties with a real interest and who have not slept on their rights. We, therefore, direct that the effect of settlement be stayed and the matter at least temporarily restored to its *status quo ante* the settlement.

We cannot, however, direct that the assignors be substituted for Padula at this stage in the proceedings, since there have been allegations that the assignment itself was invalid as the product of fraud or overreaching. We take no position as to that factual issue. We reject the argument that the assignment is *per se* invalid because of the apparent discrepancy between the purchase price and the present value of the real estate. We observe that such arguments are made from hindsight and fail to take into account the various contingent elements and other consideration noted earlier in this opinion. These are matters for a factual determination after a plenary hearing.

The validity of the assignment is a threshold factual question to be determined by the trial judge. Based upon the outcome of that hearing, he should either permit intervention of the applicants or possibly even substitution of the applicants for Padula in the proceedings; or, if warranted after a determination of invalidity of the assignment, he should dismiss the application for intervention on substantive grounds and vacate the stay. If any action is to be taken with respect to the

property pending such resolution and any ensuing review, appropriate provisions can be made in a subsequent order of the trial judge. Of course, the outstanding order to sell the property must also be stayed until the applicants are heard concerning their offer to advance funds to pay the debts of the estate, subject to reimbursement from any subsequent sale of the property if their interests are not upheld.

The order of the Law Division denying the applicants' right to intervene in the pending proceedings is reversed and this matter is remanded to the Law Division for further proceedings in accordance with this opinion.