218 N.J. Super. 38 (1987)
526 A.2d 1107
STAMATIS GOLFINOPOULOS AND BEATRICE GREENBERG, PLAINTIFFS-APPELLANTS,
v.
MICHAEL PADULA, PRISCILLA G. WILSON, PHEBE BLACK, DOROTHY VAN ALLER, FIRST FIDELITY BANK, N.A. NEW JERSEY, WILLIAM C. MORAN, JR., ESQ., AND HUFF, MORAN & BALINT, A LAW PARTNERSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1987.
Decided June 3, 1987.
*40 Before Judges FURMAN, DREIER and STERN.
Russell W. Annich, Jr. argued the cause for appellants (Carchman, Annich & Sochor, attorneys; Laura M. LeWinn and Russell W. Annich on the brief).
Paul A. DeSarno argued the cause for respondent Michael Padula (Toolan, Abbott, Ziznewski & Hollander, attorneys; Paul A. DeSarno, on the brief).
William C. Moran, Jr. argued the cause for respondents Priscilla G. Wilson, Phebe Black, Dorothy Van Aller and William C. Moran, Jr. (Huff, Moran & Balint, attorneys; William C. Moran, Jr., on the brief).
Dale E. Console argued the cause for respondent First Fidelity Bank of New Jersey (Jamieson, Moore, Peskin & Spicer, attorneys; Dale E. Console, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiffs appeal from a Chancery Division summary judgment sustaining defendants' statute of frauds defense to plaintiffs' specific performance claim. Except as to one major point the facts are substantially undisputed. The property which was the subject of the contract in question is the "Gardner Farm," formerly owned by David D. Gardner who died June 2, 1984. Prior litigation concerning the disposition of this property was the subject of our opinion in the will contest proceedings entitled In the Matter of the Will of Gardner, 215 N.J. Super. 578 (App.Div. 1987). The litigation before us now, which might be rendered moot if the interests of the intervenors in the earlier litigation are upheld by the court on remand in the will contest proceeding, involves the alleged sale of the Gardner Farm by the decedent's surviving sisters and Michael Padula, *41 the beneficiary under decedent's disputed will[1]. Plaintiffs are the apparent purchasers at a closed-bid auction sale of the property held by the sisters' attorney, William C. Moran, Jr., a member of the firm of Huff, Moran & Balint, who allegedly acted as Padula's, as well as the sisters', agent for the offering and sale of the property. This additional agency relationship is the principal disputed fact in this case.
First Fidelity Bank, the temporary administrator of the estate, had proposed to the Law Division that the property be sold at $12,500 per acre. The proposal, however, was rejected by the court, and the Gardner sisters and Padula were permitted jointly to offer the property for sale in an attempt to obtain a higher price. Plaintiffs' attorney, Russell W. Annich, Jr. of the firm of Carchman, Annich & Sochor made a written offer of $1,746,000 ($1,800 per acre) on April 7, 1986. The offer was directed to the respective attorneys for the bank, the Gardner sisters and Padula[2].
In April 1986 Padula's attorney, Jay J. Ziznewski, was involved in an automobile accident followed by a heart attack which was alleged by Moran to have rendered Ziznewski "incapable of attending to the normal details of his practice," and as a result of which "the major role in negotiating a real estate contract fell to [Moran's] office." Moran's affidavit filed in the Chancery Division further noted that he assuaged plaintiffs' concern that they were dealing with only "one-half of the *42 equation," namely only with the Gardner sisters' and not with Padula's representative. Moran further stated in his affidavit
I assured that I had received authority from Mr. Ziznewski to negotiate for the highest possible all cash price, with no contingencies, and that Mr. Ziznewski's client would sign the contract on such a basis.
After receiving other increasingly higher offers from brokers and attorneys, the highest of which being $24,000 per acre, David Orron wrote to Jay Ziznewski on May 28, 1986 and described a proposed sealed-bid auction at which the then-highest offerors would bid with a floor price of $24,000 per acre. A copy of the sealed-bid auction proposal was forwarded to Ziznewski for his review five days prior to the action. No written response was made by Ziznewski or any other representative of Padula from that point through the auction, nor even thereafter prior to the eventual rejection of the written contract submitted by plaintiffs. The sealed-bid proposal read as follows:
Sealed bids will be received at the offices of Huff, Moran and Balint on Friday, May 30, 1986 at 3:00 P.M. for the purchase of premises commonly known as Lot # 4, Block 603 on the Hamilton Township, Mercer County, New Jersey Tax Map.
Terms of sale will be as follows:
1) Minimum price $24,000.00 per acre, based on a survey to be performed by the purchaser.
2) Closing within 60 days, or 20 days of Court approval of sale, whichever is later. (Court approval required because sale is from an Estate).
3) No contingencies, other than marketability of title.
4) Brokers commission.... . 5%.
5) Deposit ... 10% on signing of contract within 10 days of receipt of bids.
6) Terms: All cash at closing.
7) Contract will definitely be awarded on Friday, May 30, 1986 to the highest responsible bidder.
Two bids were received in response to this notice. The first was a written bid from a real estate agency bidding $26,000 per acre, but reducing the commission to only $1,000 per acre rather than the $1,300 specified by the bid proposal. Plaintiffs attended the sale and offered $26,250 per acre which, with the *43 standard five percent commission, would have yielded slightly less than the other bid. When informed of the variance in the commission, plaintiffs orally also reduced the real estate commission in their bid, making their bid the highest. Moran accepted this modification, and declared plaintiffs the highest bidder. On Monday following this Friday auction, plaintiffs' attorney wrote to Moran to confirm that he would be preparing the contract of sale for review and execution. A few days later on June 6, 1986 Moran wrote to Ziznewski. The first paragraph of the letter read as follows:
I am happy to report that as per your authorization we have reached an agreement for the sale of the property in the Gardner Estate for the sum of $26,250.00 an acre. We have also been successful in negotiating the real estate commission down to $1200.00 per acre, which amounts to approximately 4 1/2%. This is an all cash transaction which is contingent only upon Court approval, if necessary, with closing to take place within 60 days. The purchaser is Beatrice Greenberg and Sam Golfinopoulos who are real estate speculators in the area; Mrs. Greenberg is also known as Mrs. "G" the owner of the appliance store in Trenton.
The letter concluded with a request that since Moran had done most of the legal work involved, his office should receive a one and one-half percent fee for the services it rendered. Over the next few days Moran and Annich exchanged copies of the form of contract and negotiated some minor changes. Although it has been urged that these negotiations showed that there was no agreement at and following the auction, this would have raised at most a factual issue[3]. It appears to us that, applying the analysis set forth in this opinion, the negotiations were merely to secure modifications to an existing contract.
On June 9, 1986 Moran sent to Ziznewski copies of the proposed contract of sale signed by the purchasers and notified *44 Ziznewski that he was depositing in his trust account plaintiffs' deposit check of $254,625. A few days later Annich wrote to Ziznewski stating that
Mr. Moran has represented that he was authorized by all parties interested in the Estate, to make a definitive commitment for the sale of the property. By memorandum dated May 28, 1986, he established the terms for a sealed bid auction, to be held on May 30, 1986 for participation by all interested parties. My client submitted the highest bid of $26,250.00 per acre.
He further indicated that he understood the contracts had been sent to Ziznewski for review and pointed out a minor error in the contract, requesting that Ziznewski make the change and have his clients initial it.
On July 1, 1986 Moran wrote to Annich stating that he understood from Padula's attorneys that Padula would not sign the contract due to receipt of another offer for $2,850,000, "more than $450,000.00 over your clients' proposal." In that letter Moran first raised a statute of frauds issue and returned the deposit check plus interest. This litigation ensued.
The trial judge determined, first, that there was no contract, since the matter had continued to be negotiated as to material terms; second, that since none of the defendants signed a formal contract, there was no writing which constituted a satisfaction of the statute of frauds; third, that as to the auction, the bid was merely an offer and until the bid was accepted there was no contract; and, lastly, that the bid and even the originally proposed contract had been changed, negating a finding of a final written agreement. Summary judgment was, therefore, granted to defendants. We disagree.
Initially, it is clear that if there is any disputed issue as to a material fact summary judgment is inappropriate. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). At this early stage of the proceedings both the trial judge and we must assume that the facts as alleged by plaintiffs are true. Although as noted at the outset the facts *45 are substantially undisputed, there is a clear factual issue as to Padula's grant of authority to Moran to hold the closed bid auction upon the terms that he did and thereafter negotiate on behalf of Padula. Although Moran strenuously urges that there was no concluded final agreement, he further has claimed by the affidavit quoted earlier that he was specifically authorized to proceed with the closed bid auction and generally to negotiate on Padula's behalf. Since for the purposes of summary judgment we must accept this fact, we will first explore whether Moran's authority to bind Padula must have been in writing in order to satisfy the statute of frauds, since plaintiffs have based their arguments principally upon documents executed by Moran or other members of his firm.
N.J.S.A. 25:1-5 provides:
No action shall be brought upon [a contract for sale of real estate] unless the agreement or promise, upon which action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized.
The words "lawfully authorized" have been held in this State not to require the authority of an agent who may execute a written contract for or memorandum of a sale of real estate to be in writing so long as the eventual contract or a memorandum of it is in writing. Buckley v. Mayor and Aldermen of Jersey City, 105 N.J. Eq. 470, 480 (Ch. 1930), aff'd o.b. 107 N.J. Eq. 137 (E. & A. 1930); Lindley v. Keim, 54 N.J. Eq. 418, 422 (E. & A. 1896); National Home Builders, Inc., v. Stokem, 139 N.J. Eq. 167, 170 (Ch. 1946); Campbell v. Hough, 73 N.J. Eq. 601, 606 (Ch. 1907). Moran's affidavit that he was authorized by Padula's attorney to proceed with the auction at least raises a factual issue as to this point, precluding summary judgment on this issue.
We must next examine the various statements signed by Moran to see whether they singly or collectively contain sufficient terms to bind not only his clients, the Gardner sisters, but *46 also Padula. It could be argued that Moran's letter of June 6, 1986 to Ziznewski, the first paragraph of which is quoted above, provides a sufficient memorandum signed by Moran. But we need not even look to that letter, for the invitation to bid itself stands as a sufficient memorandum of the sale. To reach this conclusion we must distinguish between an auction at which the sellers make no commitment to convey the auctioned property, and auctions where, as here, the sellers agree to convey to the highest bidder upon stipulated terms.
The seventh term of sale in the memorandum stated:
Contract will definitely be awarded on Friday, May 30, 1986 to the highest responsible bidder.
This provision transformed the sale to the equivalent of a sale "without reserve," to use the terminology of auctions of personal property. See N.J.S.A. 12A:2-328(3). In such a situation the auction notice is an offer. In this case the offer was in writing and signed by the attorneys representing the Gardner sisters and, if sufficient proof of agency is forthcoming at trial, also acting as the agent for Padula. The definite award language raises the memorandum from a solicitation for offers from prospective purchasers to a firm offer to sell upon the particular terms, to be accepted by the act of bidding and declaration that the bid is the highest received. Until such final declaration the bidders could retract their bid. Cf. N.J.S.A. 12A:2-328(3) and New Jersey Study Comment 3 stating that this section "is in accord with New Jersey law."[4] Since there was no retraction, and plaintiffs' written bid had been accepted as orally modified in defendants' favor with the modifications accepted, a contract was then formed, if the attorneys are shown at trial also to have had Padula's authority to offer the property.
*47 There is no direct case authority for this proposition in New Jersey and the authorities nationwide are somewhat divided, but lean heavily on the side of a "without reserve" auction notice constituting an offer. Compare United States v. Von Cseh, 354 F. Supp. 315, 319 (S.D. Tex 1972) (interpreting Texas law, the court held that "without reserve" means real property will be awarded to highest bidder at auction and will not be withdrawn from sale before acceptance of bid); Holston v. Pennington, 304 S.E.2d 287, 290 (Va. 1983) (in auction "without reserve," the announced terms of sale constitute a continuing offer by owner of real property, subject to acceptance by receipt of bid; the bidder's contract is final with fall of the hammer); and Jenkins Towel Service, Inc. v. Fidelity-Philadelphia Trust Co., 400 Pa. 98, 161 A.2d 334 (1960) (the court found a letter offering the property for sale to have been an offer and the bids in compliance therewith an acceptance), with S.S.I. Investors Ltd. v. Korea Tungsten Mining Co., 80 A.D.2d 155, 438 N.Y.S.2d 96 (App.Div. 1981), aff'd 55 N.Y.2d 934, 434 N.E.2d 242, 449 N.Y.S.2d 173 (1982) (the New York Appellate Division found that where the solicitation for bids stated that the property would be awarded to the highest bidder, the bid itself was merely an offer, and was rendered void for indefiniteness and, therefore, was not subject to acceptance by the inclusion of an additional term stating an alternative bid $1 higher than any other bid received; the Court of Appeals affirmed on the latter basis, i.e., that the bid as submitted frustrated the closed bidding purpose of the sale).
This subject is also addressed in Restatement, Contracts, 2d (1979) § 28(1)(b). By its terms the section appears applicable to goods as opposed to real estate; it substantially restates the Uniform Commercial Code rules quoted earlier. Illustration 3, however, makes it clear that the § 28(1)(b) rules are equally applicable to auction sales of real estate. The Illustration provides:
3. A advertises, `I offer my farm Blackacre for sale to the highest cash bidder and undertake to make conveyance to the person submitting the highest bid *48 received at the address below within the next 30 days.' This is an offer, and each bid operates as an acceptance creating rights and duties conditional on no higher bid being received within thirty days.
See also 1 Corbin on Contracts § 108 (1963) at 483-485, where Professor Corbin noted that a "without reserve" auction is one where the seller makes an offer and each bid constitutes a proposed acceptance made final upon the fall of the hammer or other indication that the bidding is closed.
Although the trial judge here rejected the applicability of the Pennsylvania approach indicated in Jenkins Towel Service Inc. v. Fidelity-Philadelphia Trust Co., supra, we determine that the approach outlined there and in the other cited cases and supported by the Restatement, Corbin, and, by analogy, N.J.S.A. 12A:2-328(3) provides a better-reasoned analysis of the transaction.
Since the authority of Moran to offer the property is still subject to the resolution of the factual agency issue, we must remand this matter to the Chancery Division for a plenary hearing on this point. The resolution of this issue also will determine whether plaintiffs are the contract purchasers of the bulk of the assets in the Gardner Estate, and thus may be found to have standing to participate in the pending will contest proceeding. Therefore, the Chancery judge should attempt to resolve this issue as soon as possible, since plaintiffs have indicated before us that they intend, if successful in the Chancery Division, to apply to intervene in the will contest and related proceedings. Also, if plaintiffs are successful, the Chancery judge must determine whether defendants should be compensated for any loss of interest on the returned deposit or the proceeds of the sale due to the extended nature of this litigation and, if so, in what manner they might be made whole.
The summary judgment appealed from is reversed and this matter is remanded to the Chancery Division for further proceedings in accordance with this opinion.
NOTES
[1] We conclude that because plaintiffs have indicated that they seek to intervene in the pending will contest and related proceedings, this appeal does not constitute a hypothetical determination.
[2] By letter of dated February 6, 1986 to David E. Orron, also of the firm of Huff, Moran & Balint, attorneys for the Gardner sisters, Padula's attorney, Jay J. Ziznewski, confirmed (a) prior oral arrangements that the real estate would be sold by the executor advertising the property, (b) the recognition of any brokers with a five percent commission, and (c) the required distribution of any offers to the attorneys for the bank, Padula and the Gardner sisters. For this reason plaintiffs' initial offer was addressed to the three attorneys. See Matter of Will of Gardner, supra, 215 N.J. Super. at 584 n. 4.
[3] For example, Annich's request for a 46-day delay following the court approval of the sale, rather than the 20-day period set forth in the bidding notice, would have been for a modification of the agreement. It could have been accepted or rejected by Moran. If rejected, plaintiffs would have been bound by the 20-day provision set forth in their original agreement.
[4] Notwithstanding the study comment, we have been unable to find a reported case directly on point concerning a "without reserve" auction of real estate.