PRESENT: All the Justices

DAVID O. WILLIAMS, ET AL.

v. Record No. 210972

JOHN M. JANSON

OPINION BY
JUSTICE CLEO E. POWELL
OCTOBER 20, 2022

FROM THE CIRCUIT COURT OF THE COUNTY OF MECKLENBURG
Herbert C. Gill, Jr., Judge Designate

David O. Williams ("Williams") and Frank A. Hendrick, Jr. ("Hendrick") appeal the

decision of the Circuit Court of the County of Mecklenburg determining that an auctioneer had,

prior to the start of the auction, verbally modified its advertised terms and, as a result, ordering

the conveyance of a fee simple interest in a parcel of real property by special warranty deed to

John M. Janson ("Janson").

I. BACKGROUND

Williams and Hendrick own a parcel of land containing approximately 31.74 acres in

Mecklenburg County (the "Property"). In May 2017, Williams and Hendrick advertised via

mass-mailing (the "Advertisement") an auction for the sale of the Property (the "Auction"). In

addition to providing details about the Property, the Advertisement also included the following

terms for the Auction: "Non-refundable deposit of $5,000 in certified funds due at time of

Auction with balance due in 14 days. NO financing contingencies will be allowed." The

Advertisement further provided that Williams was the person to contact "[f]or further details

about terms, conditions or other information."

Janson received a copy of the Advertisement in the mail. He attempted to contact

Williams for further details on the terms and conditions of the Auction, but never received a

response.

On May 26, 2017, Janson attended the Auction.[1] Janson approached Williams, who informed Janson that he was "going to announce all the conditions and everything at the beginning." When Janson inquired if there was anything in writing, Williams responded that there was nothing in writing, but there was an after-the-sale agreement, which he would read out loud before the Auction started.

Immediately prior to the Auction, Williams stated:

> All right, so we're going to auction this off. The high bidder today will be required to pay a five thousand dollar deposit due today or at the time of the commencement of the sale. It has to be in cash and certified funds. They have fourteen days to complete the sale. There's an agreement to be signed at the end of the sale.

Williams then proceeded to read the language that was included in the memorandum of sale that the "successful bidder" would be required to sign.

When the Auction began, the following exchange occurred:

WILLIAMS: All right, I've got a bid of thirty. How about forty? Forty thousand? Everybody scared this morning or what? You shouldn't be scared to bid. Forty thousand. We've got a bid of forty. All right, somebody is going to have to bid here or we're going to call this a no sale, so. Anybody want a shot, give forty thousand.

JANSON: I'll do thirty-five.

WILLIAMS: All right, I've got thirty-five, do I hear forty, forty? Forty-five? Anybody want to bid forty-five thousand? All right, well if nobody else is going to bid, I'm going to give you a last chance here to bid again or else we're going to call this a no sale. Nobody wants to beat forty-five? Going once, going twice, I guess we're going to have to no sell it. All right, I'm sorry every [unintelligible] coming out.

After the Auction had concluded, there was some confusion as to who had made the bid for $40,000. Janson approached Williams and inquired whether his bid of $35,000 was the high

---

[1] Upon arriving at the Auction site, Janson began recording the proceedings and the record was later transcribed and offered into evidence.

bid. Williams confirmed that it was the high bid, but that he would not sell the Property for that amount.

Janson subsequently filed a complaint seeking specific performance from Williams and Hendrick to sell him the property for $35,000. Janson alleged that, in his pre-auction announcement, "Williams used explicit language that conveyed to the bidders that the auction that was about to commence was going to be an absolute auction, or in other words, an auction without reserve."

After both sides briefed the issue, the trial court considered the parties' arguments, as well as the Advertisement, the audio recording of the Auction, a transcript of the recording and the transcript of a previous hearing before a different judge that set forth the parties' arguments. In an order dated July 16, 2021, the trial court ruled that Janson was entitled to specific performance and ordered the conveyance of the Property by special warranty deed. According to the trial court, the Property was "sold by [Williams and Hendrick] on May 26, 2017, by absolute auction to [Janson], who was the high bidder at said auction."

Williams and Hendrick appeal.

## II. ANALYSIS

On appeal, Williams and Hendrick argue that the trial court erred in categorizing the Auction as an absolute auction. According to Williams and Hendrick, neither the Advertisement nor the announcements made at the commencement of the Auction explicitly identified the Auction as an absolute auction and, therefore, the Auction remained an auction with reserve. Janson concedes that there was never an express statement describing the Auction as an absolute auction or an auction without reserve, but he insists that such an express statement was unnecessary. Rather, Janson takes the position that the proper approach is to look at whether the

3

terms and conditions of the Auction would be reasonably understood to create an absolute auction. He contends that, under this approach, the Auction was clearly an absolute auction. Specifically, he relies on the fact that, prior to the auction, Williams stated that the high bidder would be required to pay $5,000 and no minimum price was ever stated. Janson also points to the language of the after-the-sale agreement that Williams read prior to the sale.

## A. Standard of Review

The question before this Court is, ultimately, whether a contract for the sale of the Property exists between the parties. We have explained that "whether [a valid] contract exists is a pure question of law." *Spectra-4, LLP v. Uniwest Commercial Realty, Inc.*, 290 Va. 36, 42 (2015) (quoting *Mission Residential, LLC v. Triple Net Props.*, LLC, 275 Va. 157, 161 (2008)) (brackets in original). Accordingly, our review of the trial court's decision in this case is de novo. *Id.*

## B. Type of Auction

Generally speaking, there are two types of auctions that give rise to a contract for the sale of property: auctions with reserve and absolute auctions (i.e., auctions without reserve). In an auction with reserve, the owner or auctioneer invites offers from bidders and none of those offers are deemed accepted until the completion of the auction (i.e., the fall of the hammer[2]). *See* Code § 54.1-600; Code § 8.2-328(2).[3] As acceptance of an offer occurs with the fall of the hammer,

---

[2] There is no requirement that the auctioneer actually use a literal hammer to indicate an auction is complete. *Yaffe v. Heritage Sav. & Loan Ass'n*, 235 Va. 577, 581 (1988). "All that is necessary is that the auctioneer, after receiving the apparent last and highest bid, give clear notice of his intention to accept it if no higher bids are forthcoming, give those present a fair opportunity to submit higher bids and then, if none is forthcoming, announce in some clear and unequivocal manner that the highest bid is accepted and the sale completed." *Id.*

[3] We recognize that Code § 8.2-328 is part of the Uniform Commercial Code ("UCC") and therefore only applies to the sale of goods and not to real property. However, we have

4

no contract has been created between the parties until the auction is complete. Therefore, at any time prior to the fall of the hammer, the owner or the auctioneer may withdraw the property for sale. *See generally Holston v. Pennington*, 225 Va. 551, 556-57 (1983); Code § 8.2-328(3).

In an absolute auction "the real or personal property to be sold will pass to the highest bidder regardless of the amount of the highest and last bid." Code § 54.1-600. Unlike an auction with reserve, the announced terms of sale for an absolute auction "constitute a continuing offer by the owner, subject to acceptance by the submission of a bid." *Holston*, 225 Va. at 557. In other words, "[e]ach bid is the consummation of a contract, subject only to the receipt of a higher bid." *Id.* (citing *Pitchfork Ranch Co. v. Bar TL*, 615 P.2d 541, 548 (Wyo. 1980)). As a result, neither the owner nor the auctioneer can withdraw the property after the first bid has been received in an absolute auction, nor may they reject any valid bids or otherwise nullify the sale. *Id.* at 556.

The advertised terms of an auction dictate the type of auction that will be conducted. *Id.* By default, an auction is with reserve "unless *expressly* made otherwise." *Id.* at 557 (emphasis added); *see also Pitchfork Ranch Co.*, 615 P.2d at 548 (noting that all auctions are auctions with reserve unless "the advertisements and preliminary information representations . . . announce the sale to be without reserves"). Additionally, "[t]he auctioneer may . . . prior to opening the bidding, make oral modifications and additions to the advertised terms, which will be binding upon the bidders." *Id.* at 556. Taken as a whole, it is clear that an auction is with reserve unless

explained that, in certain situations, it is "appropriate to borrow from [the UCC] to establish [a] rule applicable to [auctions of real property]." *Hoffman v. Horton*, 212 Va. 565, 567 (1972). This is especially true where, as here, the application of the UCC is necessary "to achieve uniformity" and, more importantly, results in a "rule which is both necessary and fair." *Id.*

the advertisement or the auctioneer explicitly indicates that it is an absolute auction or an auction without reserve.

At trial, Janson conceded that the Auction, as advertised, was an auction with reserve because the Advertisement did not state that it would be an absolute auction. He instead focuses on Williams' announcement prior to the Auction, claiming that Williams' statements converted the Auction to an absolute auction. We note, however, that only a small portion of Williams' pre-auction announcement actually related to the terms of the Auction; the majority of the announcement involved Williams' reading of the memorandum of sale, which he clearly indicated only applied to the "successful bidder."[4] In other words, the memorandum of sale was conditioned upon the completion of the Auction and, therefore, would not ordinarily inform the terms of the Auction itself.[5] Thus, the only portion of Williams' pre-auction announcement that arguably could relate to the terms of the Auction is Williams' statement that "[t]he high bidder today will be required to pay a five thousand dollar deposit due today" and his description of the time frame for completing the sale.

---

[4] As Williams points out, an auction may implicate as many as three separate contracts. The first contract is the agency agreement between the seller and the auctioneer in which the seller authorizes the auctioneer to sell the property. *See generally Holston*, 225 Va. at 558 (recognizing that "the auctioneer is the agent of the seller throughout the sale"). The second contract is between the auctioneer and the bidders regarding the nature of the auction. *See Warlow v. Harrison*, 1 El. & El. 295, 316-17 (Exch. 1859) (recognizing that the type of auction involves a contract between the auctioneer and the bidders). Finally, there is the actual sales contract between the seller and the winning bidder, which only comes into existence upon the fall of the hammer. *See Holston*, 225 Va. at 557.

[5] Even if the memorandum of sale in this case could be interpreted as informing the terms of the Auction, the outcome would be the same because, for the reasons discussed below, the language contained in the memorandum of sale is insufficient to convert the Auction to an absolute auction.

Notably, Williams never explicitly stated that the Auction was absolute or without reserve during his pre-auction announcement; nor did he make any statement that limited his ability to withdraw the property from sale, reject bids or otherwise nullify the auction. Moreover, the overwhelming weight of authority holds that a statement indicating that the property will be sold to the high bidder is "a mere declaration of intention to hold an auction at which bids will be received." *Drew v. John Deere Co. of Syracuse, Inc.*, 19 A.D.2d 308, 311 (N.Y. App. Div. 1963); *see also Marten v. Staab*, 537 N.W.2d 518, 523 (Neb. App. 1995) (recognizing that advertisements or statements by the seller that real property will be sold to the highest bidder do not create an absolute auction); *Sly v. First Nat. Bank of Scottsboro*, 387 So. 2d 198, 200 (Ala. 1980) (statement that property would be sold to "the 'highest, best and last bidder' . . . cannot reasonably be construed to mean the defendant was obligated to sell under any circumstance"). "[S]uch statements are usually merely preliminary negotiation, not intended and not reasonably, understood to be intended to affect legal relations." 1 Timothy Murray, Corbin on Contracts § 4.14 (rev. ed. 2017).[6] Furthermore, the Court cannot overlook the fact that Williams' statement was virtually identical to the language included in the Advertisement, which

---

[6] That is not to say that the specific terms "absolute auction" or "without reserve" must be stated to create an absolute auction. Rather, the advertisements or pre-auction announcements must indicate an unequivocal commitment to convey the property to the highest bidder as opposed to merely indicating the seller's intention to seek bids for the property. *Golfinopoulos v. Padula*, 526 A.2d 1107 (N.J. Super. Ct. App. Div. 1987), is illustrative of this principle. In *Golfinopoulos*, the court determined that a written invitation to bid that provided a minimum price and stated, "Contract will definitely be awarded on Friday, May 30, 1986 to the highest responsible bidder," was sufficient to create an auction without reserve because "the offer was in writing" and contained "definite award language." *Id.* at 1110-11. The court explained that, under those circumstances, the invitation to bid was raised "from a solicitation for offers from prospective purchasers to a firm offer to sell upon the particular terms, to be accepted by the act of bidding and declaration that the bid is the highest received." *Id.* at 1111.

7

Janson conceded indicated that the Auction was an auction with reserve.  Accordingly, the trial court erred in its determination that the Auction was an absolute auction.

## III.  CONCLUSION

For the foregoing reasons, the trial court erred in ruling that the Auction was an absolute auction.  As the Auction remained an auction with reserve, Williams was permitted to withdraw the Property at any time prior to the fall of the hammer, which he clearly did by declaring that there would be no sale.  Therefore, no contract was formed between the parties because Williams' declaration of no sale amounted to a rejection of Janson's offer of $35,000 for the Property.  Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Williams and Hendrick.

*Reversed and final judgment.*