SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**John C. Sullivan v. Max Spann Real Estate & Auction Co.** **(A-57-20) (085225)**

**Argued November 9, 2021 -- Decided June 9, 2022**

**PATTERSON, J., writing for a unanimous Court.**

In New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, the Court held that a licensed real estate broker or salesperson who prepares a contract for the sale of certain categories of residential real estate does not engage in the unauthorized practice of law, provided that the agreement prescribes a three-day attorney review period during which either party's counsel may cancel the contract. 93 N.J. 470, 471-86, modified, 94 N.J. 449 (1983). This appeal as of right, based on a dissent in the Appellate Division, raises the question whether the holding in State Bar Ass'n mandates a three-day attorney review clause in a sales contract executed after an absolute auction of residential real estate.

Max Spann is a licensed real estate agency operated by Max Spann, Jr. (Spann), a licensed real estate broker. The agency has conducted real estate auctions for more than fifty years and has established standard procedures and documents it requires prospective bidders to review and sign before participating in a real estate auction. In more than one place, the bidder is informed that, by signing the document, the bidder "recognize[s] that this is an auction sale and is not subject to an attorney review period." One notice states that the real estate broker "represent[s] the seller, not the buyer" and that "[t]he title company does not represent either the seller or the buyer." The notice discloses that the bidder "will not get any legal advice unless you have your own lawyer"; that "[s]igning the contract is a big step"; and that "[a] lawyer would review the contract, help you to understand it, and to negotiate its terms." The notice also advises prospective bidders that "[t]he contract is final and binding"; that "[a] buyer without a lawyer runs special risks"; and that "[w]hether you retain a lawyer is up to you."

The transaction that gave rise to this appeal was the sale of a residential property in Bernardsville (Property). At the time of the auction, the Property was owned by plaintiff Sylvester L. Sullivan Grantor Retained Income Trust. Plaintiff John C. Sullivan (Trustee) was appointed Trustee of that Trust. Defendant Mengxi Liu was an experienced bidder at real estate auctions. She stated that she and her husband, Liang Wang, had purchased six residential properties prior to the auction at

1

issue and had previously attended four or five real estate auctions conducted by Max Spann. On September 25, 2016, either Liu or Wang completed a pre-auction form, which acknowledged receipt of information including the template Contract for Sale of Real Estate and the notice.

The auction was held at a hotel on October 20, 2016. Liu bid $1.1 million for the Property and was the highest bidder when the auction ended. Liu testified that in the wake of her successful bid, Max Spann employees escorted her to a separate room where documents -- completed versions of the template Contract and notice previously received -- were signed, and Liu paid $121,000 as an earnest money deposit. Pursuant to its agreement with the seller, Max Spann deposited the earnest money deposit in an escrow account.

Liu was unable to satisfy her obligations under the Contract and did not purchase the Property. Max Spann retained Liu's $121,000 earnest money deposit in an escrow account. In March 2017, Max Spann conducted a second auction to sell the Property. The Trust sold the Property to the highest bidder for $825,000.

The Trustee and the Trust brought an action against Max Spann and later named Liu as a defendant. Plaintiffs sought a declaratory judgment that Liu had breached the Contract and that the Trust should receive the deposit as liquidated damages. Max Spann counterclaimed for half of the deposit.

The case proceeded to a bench trial. The trial court held that no three-day attorney review clause was necessary, that the Contract was enforceable, and that Liu had breached the Contract by failing to purchase the Property. It entered judgment on plaintiffs' breach of contract claim against Liu and ordered that Liu's $121,000 earnest money deposit be divided equally between Max Spann and the Trust. The Appellate Division majority affirmed the trial court's judgment over a dissent questioning the court's jurisdiction. 465 N.J. Super. 243, 256-66, 267-73 (App. Div. 2020). Liu appealed as of right based on the dissent pursuant to Rule 2:2-1(a)(2).

**HELD:**     *A residential real estate sale by absolute auction is distinct from a traditional real estate transaction in which a buyer and seller negotiate the contract price and other terms and memorialize their agreement in a contract. In an absolute auction or an auction without reserve, as is the issue here, the owner unconditionally offers the property for sale and the highest bid creates a final and enforceable contract at the auction's conclusion, subject to applicable contract defenses. Imposing the three-day attorney review prescribed in State Bar Ass'n on residential real estate sales conducted by absolute auction would fundamentally interfere with the method by which buyers and sellers choose to conduct such sales.

2

*The notice and template sales contract that Max Spann provided to Liu prior to the auction -- cautioning her that any sale at the auction would be final with no attorney review period -- serves the consumer protection objectives that the Court sought to achieve in State Bar Ass'n. The Court finds no unauthorized practice of law in this case. The contract signed by Liu was valid and enforceable.

1. The Court has jurisdiction to decide the unauthorized practice of law question presented in this appeal by virtue of its constitutional authority to regulate the legal profession. That authority is given to the Court not to protect lawyers, but rather to protect the public. Whether a given activity constitutes the unauthorized practice of law demands a case-by-case analysis viewing the circumstances in a common-sense way that will protect the interest of the public and not hamper or burden that interest with impractical and technical restrictions which have no reasonable justification. Courts determine the public interest by balancing the risks and benefits to the public of allowing or disallowing the challenged activities. (pp. 18-20)

2. In State Bar Ass'n, the New Jersey State Bar Association reached a settlement agreement as to its claim that licensed realtors were engaging in the unauthorized practice of law when they prepared real estate sales contracts. Pursuant to the settlement, realtors would be permitted to prepare sales contracts in certain circumstances, provided that each contract contain a clause permitting each party to obtain attorney review within three business days. The Court found that, "[t]o the extent that there is an inevitable . . . overlap between the realty and legal professions, the public's interest is safeguarded through the settlement's attorney review provisions and the Court's continuing supervisory control." State Bar Ass'n, 93 N.J. at 474. The Court modified the Consent Judgment to include certain specific language that announces and explains the three-day attorney review period. Id. at 475-76. State Bar Ass'n concerned traditional real estate transactions in which a real estate broker or salesperson assists the buyer and the seller by negotiating the terms of the contract, and the transaction then proceeds to closing. There is no suggestion that the dispute between the legal and real estate professions in State Bar Ass'n involved sales by auctions, and no mention of the process by which real estate is sold in an auction without reserve. (pp. 20-25)

3. Three principles derived from the Court's jurisprudence on the unlawful practice of law guide the determination of this appeal. First, the paramount goal of restricting the unauthorized practice of law is not to promote the interests of attorneys, but to serve the public right to protection against unlearned and unskilled advice in matters relating to the science of the law. Second, although it is clear that in real estate transactions the parties would be well advised to retain counsel, the public interest sometimes requires that non-attorney professionals be permitted to engage in activities that constitute the practice of law under appropriate conditions. In such settings, the Court determines whether the protection that lawyers provide

3

and parties need can be addressed by providing notice of the right to retain counsel and the risk of not doing so. Third, the Court seeks in each case a fair and practical solution that takes into account the essential features and requirements of the transaction chosen by the parties. (pp. 26-29)

4. The real estate transaction at issue here stands in stark contrast to the traditional real estate transaction that was the focus of State Bar Ass'n. In a typical real estate transaction, a buyer and seller negotiate the sales price and other terms of the contract, and the contract is prepared in accordance with the agreed-upon terms. In an absolute auction like this one, the seller's offer occurs when there is public notice of an auction without reserve, and the highest bid constitutes acceptance of that offer and determines the sales price. Once the auction commences, the seller must accept the highest bid. Subject to any applicable contract defenses, the parties' contract is ordinarily final and enforceable at the close of the auction. (pp. 29-30)

5. The attorney review period prescribed in State Bar Ass'n is incompatible with the sale of residential real estate by absolute auction. If the Court were to permit counsel to cancel contracts for any reason after an auction as in a traditional real estate transaction, buyers would be deprived of the opportunity to purchase property at a bargain price, and sellers would lose the benefit of an accelerated and final sale. The Court declines to apply the attorney review requirements announced in State Bar Ass'n to the absolute auction at issue here. (p. 31)

6. And the Court does not consider the role of the licensed real estate salesperson in this case to constitute the unauthorized practice of law. If, as trial testimony suggests, a licensed real estate salesperson employed by Max Spann handwrote Liu's name and address and the price terms on a template contract following the auction, that individual did nothing more than memorialize terms that were already part of a contract formed at the auction's conclusion. Further, the public policy objective stated in State Bar Ass'n was substantially achieved by the information that Max Spann provided to Liu before the auction. The importance of legal representation and attorney review of the Contract prior to the auction was clearly communicated to the prospective purchaser in this case, and thus the Court's objective in State Bar Ass'n that buyers and sellers be informed of the opportunity to consult counsel -- and the risks of declining to do so -- was achieved here. In sum, there was no unauthorized practice of law in the preparation of the Contract for Sale of Real Estate that Liu executed. (pp. 32-34)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FISHER (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN did not participate.**

John C. Sullivan, as
Trustee of the Sylvester L.
Sullivan Grantor Retained
Income Trust, and
Sylvester L. Sullivan
Grantor Retained
Income Trust,

Plaintiffs-Respondents,

v.

Max Spann Real Estate
& Auction Co.,

Defendant-Respondent,

and

Mengxi Liu,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
465 N.J. Super. 243 (App. Div. 2020).

| Argued | Decided |
| --- | --- |
| November 9, 2021 | June 9, 2022 |

Randall J. Peach argued the cause for appellant (Woolson
Anderson Peach, attorneys; Randall J. Peach, and Mark
S. Anderson, of counsel and on the briefs).

1

Pierre Chwang argued the cause for respondents John C. Sullivan, as Trustee of the Sylvester L. Sullivan Grantor Retained Income Trust, and Sylvester L. Sullivan Grantor Retained Income Trust (Wilentz, Goldman & Spitzer, attorneys; Pierre Chwang, of counsel and on the brief).

Peter G. Verniero argued the cause for respondent Max Spann Real Estate & Auction Co. (Sills Cummis & Gross, and Benbrook & Benbrook, attorneys; Peter G. Verniero, and R. Michael Riecken, of counsel and on the briefs, and Kevin P. Benbrook, on the briefs).

F. Bradford Batcha argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Domenick Carmagnola, President, of counsel and on the brief, and F. Bradford Batcha, and Martin Liberman, on the brief).

Barry S. Goodman argued the cause for amicus curiae New Jersey Realtors® (Greenbaum, Rowe, Smith & Davis, attorneys; Barry S. Goodman, of counsel and on the brief, and Conor J. Hennessey, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In New Jersey State Bar Ass'n v. New Jersey Ass'n of Realtor Boards, we held that a licensed real estate broker or salesperson who prepares a contract for the sale of certain categories of residential real estate does not engage in the unauthorized practice of law, provided that the agreement prescribes a three-day attorney review period during which either party's counsel may cancel the contract. 93 N.J. 470, 471-86, modified, 94 N.J. 449 (1983).

2

This appeal as of right, based on a dissent in the Appellate Division, raises the question whether our holding in State Bar Ass'n mandates a three-day attorney review clause in a sales contract executed after an absolute auction of residential real estate.

Defendant Mengxi Liu, the successful bidder in a real estate auction conducted by defendant Max Spann Real Estate and Auction Co. (Max Spann), asserted as a defense to the seller's breach of contract action that the contract she signed to purchase the property was void and unenforceable. In her appeal of the trial court's judgment finding her in breach of her contract, Liu argued that the agreement was unenforceable because a licensed real estate salesperson employed by Max Spann wrote her name and address as the buyer and purchase price information on blank spaces in a template sales contract following the auction. Liu contended that this activity constituted the unauthorized practice of law because the contract did not provide for the three-day attorney review period that we mandated in State Bar Ass'n.

In a split decision, the Appellate Division declined to apply State Bar Ass'n to the absolute auction at issue. Sullivan Grantor Retained Income Tr. v. Max Spann Real Est. & Auction Co., 465 N.J. Super. 243, 256-66 (App. Div. 2020). Noting that Max Spann advised Liu prior to the auction that there would be no three-day attorney review period and that it encouraged her to

3

consult a lawyer, the Appellate Division majority concluded that we did not intend State Bar Ass'n to govern in the circumstances of this appeal. Id. at 260. The dissenting Appellate Division judge reasoned that because this Court in State Bar Ass'n identified no exception for sales of residential property by auction, the Appellate Division majority exceeded its authority when it excluded auction sales from the attorney review requirement. Id. at 266-73 (Fuentes, P.J.A.D., dissenting).

We agree with the Appellate Division that a residential real estate sale by absolute auction is distinct from a traditional real estate transaction in which a buyer and seller negotiate the contract price and other terms and memorialize their agreement in a contract. See id. at 259-61 (majority opinion). In an absolute auction or an auction without reserve, as is the issue here, the owner unconditionally offers the property for sale and the highest bid creates a final and enforceable contract at the auction's conclusion, subject to applicable contract defenses. Panetta v. Equity One, Inc., 190 N.J. 307, 312 n.1 (2007). Were we to impose the three-day attorney review prescribed in State Bar Ass'n on residential real estate sales conducted by absolute auction, we would fundamentally interfere with the method by which buyers and sellers choose to conduct such sales. We view the notice and template sales contract that Max Spann provided to Liu prior to the auction -- cautioning her that any

4

sale at the auction would be final with no attorney review period -- to serve the consumer protection objectives that we sought to achieve in State Bar Ass'n. We find no unauthorized practice of law in this case and hold that the contract signed by Liu was valid and enforceable.

Accordingly, we affirm as modified the Appellate Division's judgment.

## I.

### A.

#### 1.

Max Spann is a licensed real estate agency operated by Max Spann, Jr. (Spann), a licensed real estate broker.[1]  The agency has conducted real estate auctions for more than fifty years.

According to Spann's testimony, Max Spann's standard procedure in advance of a real estate auction is to provide prospective bidders with a detailed Property Information Package about the property to be sold, including "surveys, zoning, title, if we have it, [and the] seller's disclosure."  Spann stated that in order to participate in an auction conducted by his agency, a prospective bidder is required to complete a Bidder Registration Form prior to the auction and accept "the terms and conditions of the auction, should they

---

[1]  We summarize the facts based on the trial record.

5

participate." The Bidder Registration Form states that by executing the form, the prospective bidder agrees to review the Property Information Package prior to the auction. Spann testified that a prospective bidder who submits a completed Bidder Registration Form is provided the Property Information Package regarding the auction electronically or in paper form.

In the Bidder Registration Form, Max Spann notifies prospective bidders that "[t]he successful high bidder will be required to sign a contract of sale immediately upon the conclusion of the auction." By signing the form, the bidder agrees to "review the contract of sale prepared by Seller's Counsel" that is included in the Property Information Package. The form also confirms that, as a condition of participating in the auction, the bidder "recognize[s] that this is an auction sale and is not subject to an attorney review period."

A blank template of the Contract for Sale of Real Estate included in the Property Information Package reiterates information provided in the Bidder Registration Form. A notice attached to the contract instructs the buyer and seller to "read this notice before signing the contract." In that notice, Max Spann states that the real estate broker "represent[s] the seller, not the buyer" and that "[t]he title company does not represent either the seller or the buyer." It discloses that the bidder "will not get any legal advice unless you have your own lawyer"; that "[s]igning the contract is a big step"; and that "[a] lawyer

6

would review the contract, help you to understand it, and to negotiate its terms." Max Spann advises prospective bidders on the notice that "[t]he contract is final and binding"; that "[a] buyer without a lawyer runs special risks"; and that "[w]hether you retain a lawyer is up to you."

A paragraph in the contract entitled "Attorney Review" provides that

> [t]his Contract was reviewed and prepared by Seller's counsel. While the terms and conditions herein are non-negotiable and will not be altered, it has been made available for review by prospective purchasers and their legal representation prior to Auction Day and on Auction Day itself. Both parties agree that the three (3) day attorney review period does not apply to this transaction.

The contract includes blank spaces for the name and address of the buyer, the bid price, the buyer's premium representing ten percent of the bid price, and the total purchase price.

Spann testified that following a successful bid, the terms of the contract that are left blank in the template would be filled in by hand by a Max Spann employee, by the buyer, or by the seller.

2.

The transaction that gave rise to this appeal was the sale of a residential property in Bernardsville (Property). At the time of the auction, the Property was owned by plaintiff Sylvester L. Sullivan Grantor Retained Income Trust. Plaintiff John C. Sullivan (Trustee) was appointed Trustee of that Trust.

7

On September 7, 2016, Max Spann and Sylvester L. Sullivan, Grantor of the Trust, entered into a Real Estate Auction Agreement. That Agreement stated that the seller would "sell the Property Absolute, meaning regardless of price, pursuant to the terms of the Contract of Sale as prepared by Seller's attorney." It also provided that Max Spann would collect and hold in escrow an "earnest money deposit from the high bidder" and that, in the event that the highest bidder were to forfeit the earnest money deposit, that deposit would be "divided equally between the parties hereto, one half to the Seller and one half to the Broker, except that the Broker's portion shall not exceed the regular commission due." According to Spann, the Trust's attorney reviewed the template Contract for Sale of Real Estate that was sent to prospective purchasers prior to the auction, and approved it without requesting any revisions.

Liu, who testified that she was a college graduate and spoke Mandarin and "some basic simple English," was an experienced bidder at real estate auctions. She stated that she and her husband, Liang Wang, had purchased six residential properties prior to the auction at issue. Liu testified that she and her husband had previously attended four or five real estate auctions conducted by Max Spann and had unsuccessfully bid at one of them.

On September 25, 2016, either Liu or Wang completed a Bidder Registration Form for the auction of the Property. On the form, Wang's name was handwritten but crossed out, and Liu's name, Wang's e-mail address, Wang's telephone number, and their home address were handwritten. The form was signed, but it is unclear whether Liu or Wang signed it; Liu testified that she did not sign the form and that she believed that the notation on the signature line represented Wang's initials. The signer of the form acknowledged receipt of the Property Information Package, which included the template Contract for Sale of Real Estate and the attached notice.

The auction was held at a hotel on October 20, 2016. According to Liu's testimony at trial, she sat with Wang during the bidding for the Property. She said she was "a little bit anxious" because the bids on the Property exceeded her $800,000 budget for the auction. Liu bid $1.1 million for the Property, and was the highest bidder when the auction ended.

Liu testified that in the wake of her successful bid, Max Spann employees escorted her to a separate room, where the Trustee and Liu executed the Contract for the sale of the Property (Contract). The parties' Contract was the template Contract for Sale of Real Estate that Liu had previously received, with the buyer's name and address, the bid price, the premium, and the total price handwritten in the blank spaces.

9

Liu and the Trustee signed the Contract. Liu, the Trustee, and Spann signed the notice page attached to the Contract, which stated the importance of retaining counsel before an auction and the risks of self-representation at an auction sale.

Liu paid $121,000 as an earnest money deposit on the purchase of the Property. Pursuant to its Auction Agreement with the seller, Max Spann deposited the earnest money deposit in an escrow account.

3.

Liu testified that she attempted to secure a mortgage to purchase the Property but was unable to do so. She stated that she traveled to China in an attempt to obtain the money she needed but was barred by Chinese law from wiring the money to the United States. Liu was unable to satisfy her obligations under the Contract and did not purchase the Property. Max Spann did not pay the Trust any portion of Liu's $121,000 earnest money deposit. It retained that deposit in an escrow account.

On March 9, 2017, Max Spann conducted a second auction to sell the Property. The Trust sold the Property to the highest bidder for $825,000.

## B.

### 1.

Plaintiffs brought this action against Max Spann in the Law Division. They alleged that Max Spann breached the Auction Agreement because it failed to qualify Liu as a buyer with sufficient funds to close title, and they asserted claims for breach of the implied covenant of good faith and fair dealing and for unjust enrichment based on Max Spann's refusal to release Liu's earnest money deposit to the Trust.

After the trial court ruled that Liu was an indispensable party, plaintiffs filed an amended complaint naming Liu as a defendant. They sought a declaratory judgment that Liu had breached the Contract, that she was not entitled to a return of her deposit, and that the deposit should be paid in its entirety to the Trust as liquidated damages as a remedy for Liu's breach of contract. Max Spann filed a counterclaim against plaintiffs and a crossclaim against Liu, contending that Liu had breached her contract and forfeited her right to her earnest money deposit. It sought a declaratory judgment that it was entitled to half of the funds held in escrow and that plaintiffs were entitled to the other half of those funds. In her answer, Liu asserted as an affirmative defense that "there was no meeting of the minds sufficient to form a contract, which was exacerbated by the language barrier of Liu." At that stage, Liu did

11

not challenge the Contract on the ground that it lacked a provision for a three-day attorney review period.

After denying cross-motions for summary judgment, the trial court conducted a bench trial. The Trustee, Spann, and Liu testified before the trial court. At the court's direction, the parties submitted briefs addressing whether a contract for a residential real estate sale at auction is valid without a provision for attorney review.

The trial court found that Max Spann prepared the Contract, that Liu signed it, and that Wang had apparent authority to act on Liu's behalf. The court concluded that the Max Spann representative who escorted Liu to a separate room after the bidding was "most probably Susan Dann who filled in the blanks on the contract for the sale of the real estate."

The trial court stated that if this Court's decision in State Bar Ass'n required an attorney review clause in contracts for the sale of residential real estate at auction, the Contract would be voidable and Liu would be entitled to the return of her earnest money deposit in the amount of $121,000. It held, however, that "where a bidder has had adequate time to have the contract reviewed by their attorney and make changes prior to the auction sale," no three-day attorney review clause was necessary. The trial court reasoned that in the auction sale, the consumer-protection purpose of the attorney review

12

clause was achieved because the bidder was provided with a copy of the sales contract in advance of the auction and indicated that she would review it before bidding on the Property.

The trial court accordingly held that the Contract was enforceable and that Liu had breached the Contract by failing to purchase the Property. It entered judgment on plaintiffs' breach of contract claim against Liu. The trial court rejected plaintiffs' argument that Max Spann had breached the Auction Agreement and dismissed plaintiffs' claims against Max Spann for breach of the implied covenant of good faith and fair dealing and for unjust enrichment. It ordered that Liu's $121,000 earnest money deposit held in escrow should be divided equally between Max Spann and the Trust. The court dismissed all remaining claims, counterclaims, and crossclaims, and stayed its judgment pending appeal.

## 2.

Liu appealed the trial court's judgment. She argued before the Appellate Division that the Contract for Sale of Real Estate was unenforceable because it did not comply with this Court's decision in State Bar Ass'n, that the trial court's ruling authorized real estate agents to engage in the unauthorized practice of law, and that the notice sent to Liu encouraging her to retain counsel was an inadequate substitute for an attorney review clause. Plaintiffs

filed a cross-appeal, arguing that they were entitled to the entirety of Liu's $121,000 deposit, not fifty percent of that deposit as the trial court had ruled.

In an opinion by Judge Firko, the Appellate Division affirmed the trial court's judgment. Sullivan, 465 N.J. Super. at 256-66. The court observed that in State Bar Ass'n, we sought to protect consumers contemplating real estate transactions by providing them with notice of their right to have an attorney review real estate contracts and prescribing a three-day period for such review. Id. at 258-59. The appellate court distinguished "a typical real estate transaction involving one-to-four family homes" from a real estate auction, in which "[t]he seller has an interest to sell property in an expedient manner and liquidate their interest," and "[p]otential buyers are encouraged to seek counsel before the auction is held and review their financial wherewithal." Id. at 259. The court concluded that "a private real estate auction sale is not the consumer type contract contemplated in [State Bar Ass'n], and therefore, the three-day attorney review period is not required in such a sale." Id. at 260. The Appellate Division rejected Liu's remaining defenses to enforcement of the Contract and ruled that Liu breached the Contract. Id. at 262-64. It held that the trial court had properly rejected plaintiffs' claims against Max Spann and divided Liu's earnest money deposit equally between plaintiffs and Max Spann. Id. at 264-66.

14

Judge Fuentes dissented from the Appellate Division's judgment. Id. at 266-73 (Fuentes, P.J.A.D., dissenting). Noting that in State Bar Ass'n the Court "made no exception for auction sales," the dissenting judge viewed the majority's holding to "exercise[] jurisdictional authority over a subject matter exclusively reserved to our Supreme Court by our State's Constitution." Id. at 269, 271. He stated that the arguments asserted in favor of excluding auction sales from attorney review requirements "may warrant serious consideration by the Supreme Court," but opined that the Appellate Division's "institutional role as an intermediate appellate court precludes [it] from rushing ahead of the Court in an area of law constitutionally reserved for its jurisdiction." Id. at 272-73.

3.

Pursuant to Rule 2:2-1(a)(2), Liu appealed the Appellate Division's judgment as of right based on the dissenting opinion. The New Jersey State Bar Association and New Jersey Realtors®, which had participated as amici curiae before the Appellate Division, retained amicus status.

II.

A.

Liu urges the Court to reverse the Appellate Division's judgment. She asserts that State Bar Ass'n governs this appeal notwithstanding her prior

15

experience with real estate auctions, and that the Contract is accordingly void. Liu asserts that it would be unfair to apply any modification of the State Bar Ass'n rule to her because her bid of $1.1 million was grossly excessive, her failure to purchase the Property was not her fault, and Max Spann engaged in the unauthorized practice of law.

B.

Plaintiffs argue that the Court should affirm the Appellate Division's determination that the three-day attorney review period prescribed in State Bar Ass'n does not apply to a residential real estate auction, in which prospective buyers are notified that the sale will be final at the close of the auction and encouraged to seek legal counsel before bidding. They assert that a broker or salesperson who fills in blanks to identify the successful bidder and the price after a real estate auction does not engage in the unauthorized practice of law.

C.

Max Spann contends that we should affirm the Appellate Division's judgment. It states that the person who filled in the blanks in the Contract signed by Liu was most likely a licensed member of its staff. Max Spann asserts, however, that it did not violate State Bar Ass'n in any case because the Court in that decision did not contemplate auction sales, which are fundamentally different from typical real estate transactions. It argues that

16

when a prospective buyer has effective notice and the contract in advance of an auction with sufficient time to consult counsel, there is no need for post-auction attorney review, and that allowing counsel for a party to cancel a contract would disrupt the practice of selling real estate at auction.

## D.

Amicus curiae New Jersey State Bar Association urges the Court to reverse the Appellate Division's decision and mandate attorney review of realtor-prepared auction sale contracts. It recommends that we impose additional consumer protection requirements on sales of real estate by auction, including a certification that the prospective bidder is a sophisticated investor and notice prior to an auction advising bidders that they should consult counsel in advance of an auction.

## E.

Amicus curiae New Jersey Realtors® argues that the Court should affirm the Appellate Division's judgment and clarify that the attorney review mandate of State Bar Ass'n does not apply to real estate auctions, in which a contract is formed at the moment that the auctioneer signals the close of bidding. Amicus asserts that following a successful bid, a real estate broker or salesperson who fills in missing terms does not engage in the unauthorized practice of law.

17

III.

A.

1.

This Court has jurisdiction to decide the unauthorized practice of law question presented in this appeal by virtue of its constitutional authority to regulate the legal profession.  See N.J. Const. art. VI, § 2, ¶ 3 ("The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."); State v. Bander, 56 N.J. 196, 200 (1970) ("Art. VI, § 2, par. 3 of the Constitution of 1947 vests in this Court exclusive jurisdiction over admission of persons to the practice of law and discipline of those admitted.").  In accordance with the constitutional mandate, "[w]e are given the power to permit the practice of law and to prohibit its unauthorized practice," and "have exercised that latter power in numerous cases."  In re Op. No. 26 of the Comm. on the Unauthorized Prac. of L., 139 N.J. 323, 326 (1995); see also Cape May Cnty. Bar Ass'n v. Ludlam, 45 N.J. 121, 125 (1965) ("This Court has the sole responsibility for determining what constitutes the practice of law . . . .").

Our authority to regulate "the practice of law must be exercised in the public interest; more specifically, it is not a power given to us in order to

18

protect lawyers, but in order to protect the public." In re Op. No. 26, 139 N.J. at 327. The question whether a given activity

> constitutes the unauthorized practice of law involves more than an academic analysis of the function of lawyers, more than a determination of what they are uniquely qualified to do. It also involves a determination of whether non-lawyers should be allowed, in the public interest, to engage in activities that may constitute the practice of law.
>
> [Ibid.]

That inquiry demands a case-by-case analysis, because "[n]o satisfactory, all-inclusive definition of what constitutes the practice of law has ever been devised." In re Op. No. 24 of the Comm. on the Unauthorized Prac. of L., 128 N.J. 114, 122 (1992). "[I]n cases involving an overlap of professional disciplines we must try to avoid arbitrary classifications and focus instead on the public's realistic need for protection and regulation," viewing the circumstances "in a common-sense way which will protect primarily the interest of the public and not hamper or burden that interest with impractical and technical restrictions which have no reasonable justification." In re Application of N.J. Soc'y of Certified Pub. Accts., 102 N.J. 231, 237 (1986) (quoting Gardner v. Conway, 48 N.W.2d 788, 797 (Minn. 1951)). "We determine the ultimate touchstone -- the public interest -- through the balancing of the factors involved in the case, namely, the risks and benefits to

19

the public of allowing or disallowing such activities." In re Op. No. 26, 139 N.J. at 327.

2.

In a decision preceding State Bar Ass'n by a decade, we found the record inadequate to determine whether a licensed real estate broker had committed the disorderly persons offense of the unauthorized practice of law when he adapted a blank legal form and drafted a contract for the sale of real estate. Bander, 56 N.J. at 202-03. We stated, however, "that an answer might be obtained in a separate suit for an injunction against the type of acts undertaken by defendant or for a declaratory judgment," with "a complete and detailed record . . . disclosing . . . the extent, length of existence, effect and result of the performance of similar acts by real estate brokers generally and the public need for such service." Ibid.; see also Conley v. Guerrero, 228 N.J. 339, 347-48 (2017) (noting the Court's proposal in Bander that a record be developed so it could address the unauthorized practice of law issue raised in that appeal).

"Acting on the [Court's] suggestion," the New Jersey State Bar Association filed an action against "licensed realtors as a class seeking a declaratory judgment and injunctive relief." N.J. State Bar Ass'n v. N.J. Ass'n of Realtor Bds., 186 N.J. Super. 391, 393 (Ch. Div. 1982), aff'd as modified,

93 N.J. 470 (1983). The New Jersey State Bar Association "sought a ruling that the preparation of contracts for the sale of real estate or leases thereof by licensed real estate brokers or salespersons constituted the unlawful practice of law, even though the broker or salesperson had negotiated the sale or lease." Ibid.[2]

During a trial before retired Associate Justice Mark A. Sullivan, serving in the Chancery Division on recall, the parties announced that they had settled their dispute. Id. at 395. They agreed that licensed realtors should be

> permitted to prepare contracts for the sale of residential real estate containing one to four dwelling units and for the sale of vacant one-family lots in transactions in which they have a commission or fee interest, provided [that] each contract contains a clause making it subject to review by an attorney for the buyer or seller within three business days.
>
> [Ibid.]

---

[2] The two categories of licensed real estate professionals addressed in State Bar Ass'n, real estate brokers and salespersons, are subject to different licensing requirements. See N.J.S.A. 45:15-3 (defining "real estate broker" and "real estate salesperson"); N.J.S.A. 45:15-9 (prescribing licensing requirements for real estate brokers and salespersons); N.J.A.C. 11:5-3.8 (prescribing licensing requirements for real estate brokers and broker-salespersons). In general, real estate brokers "negotiate[] contracts of sale . . . between buyers and sellers of real property" and "must be licensed in the states where they conduct business." Black's Law Dictionary 240 (11th ed. 2019) (defining "real-estate broker"). A real estate broker's principal is a buyer or seller, and a salesperson's principal is the broker. See id. at 80 (defining "real-estate agent").

The parties stipulated that "[i]f neither buyer nor seller exercises the right to have an attorney review the contract within the time permitted, the contract will be legally binding as written." Ibid. The trial court modified the language of the settlement and approved it, subject to review by this Court. Id. at 398.

The parties jointly sought approval of a Final Consent Judgment memorializing their settlement. State Bar Ass'n, 93 N.J. at 471-72. We approved the Consent Judgment, explaining that

> [t]he activities to be undertaken by realtors pursuant to the settlement agreement will not transgress unduly upon the practice of law. To the extent that there is an inevitable or unavoidable overlap between the realty and legal professions, the public's interest is safeguarded through the settlement's attorney review provisions and the Court's continuing supervisory control.
>
> [Id. at 474.]

We modified the Consent Judgment to include the following language conforming the notice to be provided to buyers and sellers to the Plain Language Law, N.J.S.A. 56:12-1 to -13. Id. at 475, 481.

> Real estate brokers and salespersons licensed by the New Jersey Real Estate Commission shall be permitted to prepare contracts for the sale of residential real estate containing one-to-four dwelling units and for the sale of vacant one-family lots in transactions in which they have a commission or fee interest, PROVIDED that every such contract shall contain conspicuously at the top of the first page the following language:

THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS. DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.

[Id. at 475.]

We also stated that "every such contract . . . shall also contain the following language" in an "Attorney Review" provision:

1. Study by Attorney
The Buyer or the Seller may choose to have an attorney study this contract. If an attorney is consulted, the attorney must complete his or her review of the contract within a three-day period. This contract will be legally binding at the end of this three-day period unless an attorney for the Buyer or the Seller reviews and disapproves of the contract.

2. Counting the Time
You count the three days from the date of delivery of the signed contract to the Buyer and the Seller. You do not count Saturdays, Sundays or legal holidays. The Buyer and the Seller may agree in writing to extend the three-day period for attorney review.

3. Notice of Disapproval
If an attorney for the Buyer or the Seller reviews and disapproves of this contract, the attorney must notify the Broker(s) and the other party named in this contract within the three-day period. Otherwise this contract will be legally binding as written. The attorney must send the notice of disapproval to the Broker(s) by certified mail, by telegram, or by delivering it personally. The telegram or certified letter will be effective upon sending. The personal delivery will be

23

effective upon delivery to the Broker's office. The attorney should also inform the Broker(s) of any suggested revisions in the contract that would make it satisfactory.

[Id. at 475-76.]

The Court imposed similar notice and attorney review requirements on certain residential leases prepared by real estate brokers and salespersons. Id. at 476-77.[3]

The Consent Judgment that we approved as modified provided that, except as set forth in the notice and attorney review provisions,

> all real estate brokers and salesmen licensed by the New Jersey Real Estate Commission are hereby permanently enjoined and restrained from drafting, filling in blanks or preparing contracts for the sale of residential real estate containing one-to-four dwelling units, contracts for the sale of vacant one-family lots, and residential dwelling unit leases with a term of one year or more. The drafting or preparation of any sales contracts for residential real estate containing one-to-four dwelling units or vacant one-family lots or leases for residential dwelling units except as provided herein shall constitute the unauthorized practice of law.

---

[3] The New Jersey Real Estate Commission determined that although members of the New Jersey Association of Realtors had "ready access" to the contract language mandated by State Bar Ass'n by virtue of that organization's participation in State Bar Ass'n, "licensees who are not members of that association lack such a source of information." 18 N.J.R. 1677(a) (Aug. 18, 1986). It accordingly adopted a regulation substantially codifying the Court's holding in State Bar Ass'n and setting forth the mandated contract terms. See N.J.A.C. 11:5-6.2(g).

24

[Id. at 481.]⁴

The trial court opinion and this Court's opinion in State Bar Ass'n make clear that the case concerned traditional real estate transactions in which a real estate broker or salesperson assists the buyer and the seller by negotiating the terms of the contract, and the transaction then proceeds to closing. See id. at 473-74 (quoting State Bar Ass'n, 186 N.J. Super. at 396) (noting that "most contracts for the sale of residential property are originally prepared by the realtors who negotiated the sales" and that the settlement accommodated both parties "by allowing the realtor to consummate the contract phase of the transaction, with attorneys handling the actual transfer of title"). There is no suggestion in either opinion that the dispute between the legal and real estate professions in State Bar Ass'n involved sales by auctions, and no mention of the process by which real estate is sold in an auction without reserve. See 93 N.J. at 473-74; 186 N.J. Super. at 396.

In unauthorized practice of law decisions following State Bar Ass'n, we continued to apply a case-by-case analysis focused on timely and effective

_____

⁴ In an order entered four months after our decision in State Bar Ass'n, we revised the "Notice of Approval" paragraph for sales contracts or leases (1) to state that "[t]he attorney may also, but need not, inform the broker(s) of any suggested revision(s) in the (contract) (lease) that would make it satisfactory;" (2) to authorize the use of the term "Realtor" instead of "Broker" in the attorney review clause in certain settings; and (3) to change the effective date of the attorney review mandate. State Bar Ass'n, 94 N.J. at 449-50.

notice to the buyer and seller about the role of counsel and practical considerations related to the transaction. We upheld the so-called "South Jersey practice" under which neither buyer nor seller must be represented by counsel at a residential real estate closing, subject to the condition that "both buyer and seller be made aware of the conflicting interests of brokers and title companies in these matters and of the general risks involved in not being represented by counsel," as well as the mandated period for attorney review. In re Op. No. 26, 139 N.J. at 357. We conformed the three-day attorney review procedure to the seven-day cancellation clause mandated for certain condominium sales by the Planned Real Estate Development Full Disclosure Act, N.J.S.A. 45:22A-21 to -56. Calvert v. K. Hovnanian at Galloway, VI, Inc., 128 N.J. 37, 46-48 (1992). Noting that we did not "glean from the [State Bar Ass'n] opinion an intent that strict adherence is necessary, so long as the interests of the consumer are protected," we expanded the authorized methods by which a buyer's or seller's attorney may communicate notice that a contract is cancelled. Conley, 228 N.J. at 356-58.

B.

1.

Three principles derived from our jurisprudence on the unlawful practice of law guide our determination of this appeal.

26

First, the paramount goal of restricting the unauthorized practice of law is not to promote the interests of attorneys, but "to serve the public right to protection against unlearned and unskilled advice in matters relating to the science of the law." Certified Pub. Accts., 102 N.J. at 237 (quoting In re Educ. L. Ctr., Inc., 86 N.J. 124, 133 (1981)); see also Conley, 228 N.J. at 352 (noting that the Court in State Bar Ass'n was "concerned first and foremost with protecting consumers' rights"); In re Op. No. 26, 139 N.J. at 327 (holding that the public interest is the "ultimate touchstone" of the inquiry); Calvert, 128 N.J. at 45 (stating that the Court in State Bar Ass'n intended to safeguard "the public's right to be protected from inadequate information" because "[c]onsulting an attorney helps a party to a real-estate transaction make choices that are in that party's best interests").

Second, although it is clear that in real estate transactions "the parties would be well advised to retain counsel," the public interest sometimes requires that non-attorney professionals be permitted to engage in "activities that constitute the practice of law" under appropriate conditions. In re Op. No. 26, 139 N.J. at 327, 356. In such settings, we determine whether "the protection that lawyers provide and parties need" can be addressed by providing notice of the "right to retain counsel and the risk of not doing so." Id. at 356. In some settings, clear and effective notice and a provision for

27

attorney review ensure that a buyer or seller's decision to forego legal representation will be an informed and considered choice. See State Bar Ass'n, 93 N.J. at 473-75.

Third, we seek in each case a fair and practical solution that takes into account the essential features of the transaction chosen by the parties. In a traditional real estate transaction in which a broker or salesperson assists the seller and buyer to negotiate the sales price and other core terms of their agreement, the notice and attorney review period mandated in State Bar Ass'n ensures that informed consumers may consult counsel without disrupting the traditional manner in which homes are sold. See id. at 474-82. Although we recognize that the decision to proceed without counsel in such a traditional residential real estate transaction is fraught with peril, we authorize that cost-saving practice provided (a) that the real estate broker provides buyers and sellers with notice informing them of the risks before they sign a contract, and (b) that the contract allows for attorney review. In re Op. No. 26, 139 N.J. at 357-62. In a condominium sale in which a governing statute requires a seven-day cancellation clause, the remedy imposed in State Bar Ass'n was modified for that discrete category of residential real estate transactions. Calvert, 128 N.J. at 46-48. The requirements of the real estate transaction that the parties

28

select is thus a key factor in our case-specific determinations of unauthorized practice of law disputes.

2.

The real estate transaction at issue here is the sale of residential property by absolute auction, or auction without reserve. An "auction" is generally defined as a "public sale of property to the highest bidder" that is "ordinarily complete when the auctioneer so announces in a customary manner, as by pounding a hammer." Black's Law Dictionary 160-61 (11th ed. 2019); cf. N.J.S.A. 12A:2-328(2) (a provision of the Uniform Commercial Code governing sales of goods by auction stating that "[a] sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner").

In an "absolute auction," the property "will be sold to the highest bidder, no minimum price will limit bidding, the owner may not withdraw property after the first bid is received, the owner may not reject any bids, and the owner may not nullify the bidding by outbidding all other bidders." Black's Law Dictionary 161 (11th ed. 2019). As this Court has observed, "[a]n auction without reserve is a unique methodology in which 'the owner essentially becomes an offeror, and each successively higher bid creates a contingent contract, the highest bid creating an enforceable agreement.'" Panetta, 190

29

N.J. at 324-25 (quoting Black's Law Dictionary 140 (8th ed. 2004)); see also Golfinopoulos v. Padula, 218 N.J. Super. 38, 47-48 (App. Div. 1987) (holding that a notice of an auction without reserve constitutes an offer).

Thus, the absolute auction or auction without reserve method of selling real estate, in which Liu and Wang chose to participate, stands in stark contrast to the traditional real estate transaction that was the focus of this Court's opinion in State Bar Ass'n. In a typical real estate transaction, a buyer and seller negotiate the sales price and other terms of the contract, and the contract is prepared in accordance with the agreed-upon terms.[5] In an absolute auction, the seller's offer occurs when there is public notice of an auction without reserve, and the highest bid constitutes acceptance of that offer and determines the sales price. Panetta, 190 N.J. at 324-25; Golfinopoulos, 218 N.J. Super. at 47; Black's Law Dictionary 161 (11th ed. 2019). Once the auction commences, the seller must accept the highest bid. Subject to any applicable contract defenses such as fraud, accident, unconscionability, or mistake, the parties' contract is ordinarily final and enforceable at the close of the auction, not at a later point in time.

---

[5] We do not address traditional real estate sales in which multiple potential buyers make competing offers in a "bidding war." Nor do we consider online auctions. Our decision is limited to the setting of this appeal, in which the Property was sold at an absolute auction or auction without reserve conducted in person.

30

3.

We concur with the Appellate Division that our decision in State Bar Ass'n does not govern the absolute auction setting of this appeal. See Sullivan, 465 N.J. Super. at 260-62.

Given the traditional real estate transaction setting of State Bar Ass'n and the absence of any reference to real estate auctions in our opinion, State Bar Ass'n, 93 N.J. at 471-77, we do not view that decision to compel a three-day attorney review provision in a real estate sales contract resulting from an absolute auction. Indeed, the attorney review period prescribed by that decision is incompatible with the sale of residential real estate by absolute auction. Were we to permit counsel to cancel contracts for any reason after an auction as in a traditional real estate transaction, buyers would be deprived of the opportunity to purchase property at a bargain price, and sellers would lose the benefit of an accelerated and final sale. See Bassford v. Trico Mortg. Co. 273 N.J. Super. 379, 387 (Law Div. 1993) (noting that "buyers at an auction for real property expect to be bound by their bids," and "sellers at an auction would be unduly burdened by the impact of an attorney review clause"), aff'd, 273 N.J. Super. 228, 229 (App. Div. 1994). Accordingly, we decline to apply the attorney review requirements announced in State Bar Ass'n to the absolute auction at issue here.

Moreover, we do not consider the role of the licensed real estate salesperson in this case -- filling in the spaces left blank on the Contract for Sale of Real Estate for the name and address of the buyer, the bid price, the buyer's premium, and the total purchase price -- to constitute the unauthorized practice of law. Liu's status as the buyer and the bid price, premium, and total purchase price were set after Liu made her final bid and the auctioneer concluded the bidding. See Panetta, 190 N.J. at 324-25 (noting that the highest bid at an auction without reserve creates an enforceable agreement); accord Black's Law Dictionary 161 (11th ed. 2019) (defining "auction without reserve"). If, as trial testimony suggests, a licensed real estate salesperson employed by Max Spann handwrote Liu's name and address and the price terms on a template contract following the auction, that individual did nothing more than memorialize terms that were already part of a contract formed at the auction's conclusion. The salesperson's minimal role does not raise the concerns that our jurisprudence on the unauthorized practice of law is intended to address.

Indeed, the public policy objective stated in State Bar Ass'n -- protecting consumers by ensuring that they are told that retaining counsel is advisable and proceeding unrepresented is risky -- was substantially achieved by the information that Max Spann provided to Liu before the auction. The Bidder

32

Registration Form and template Contract for Sale of Real Estate with its attached notice informed Liu that if she were the highest bidder, the contract would be final and binding and there would be no three-day attorney review period after the auction. Those materials apprised Liu that it was her choice whether to retain a lawyer, and that the window of opportunity to review the template Contract for Sale of Real Estate with her counsel would close before the bidding. Indeed, in the Bidder Registration Form, Liu or Wang agreed to review the template contract prior to the auction. The materials advised Liu of the benefits of hiring counsel. They identified counsel's core tasks: reviewing the template contract, helping a bidder to understand the contract, and assisting in the negotiation of its terms. They also addressed the disadvantages of proceeding unrepresented, stating that the real estate broker represented the seller, not the buyer, that the title company represented neither party, and that a buyer without a lawyer runs special risks.

Accordingly, the importance of legal representation and attorney review of the Contract prior to the auction was clearly communicated to the prospective purchaser in this case. The Court's objective in <u>State Bar Ass'n</u> that buyers and sellers be informed of the opportunity to consult counsel -- and the risks of declining to do so -- was achieved here.

In sum, there was no unauthorized practice of law in the preparation of the Contract for Sale of Real Estate that Liu executed. Our decision in State Bar Ass'n did not require that contract to include a provision for three-day attorney review, and the absence of such a provision does not provide Liu with a defense to breach of contract claims asserted by plaintiffs and Max Spann.[6] We accordingly concur with the Appellate Division's determination that the Contract was enforceable.

IV.

The judgment of the Appellate Division is affirmed as modified.

CHIEF JUSTICE RABNER; JUSTICES SOLOMON and PIERRE-LOUIS; and JUDGE FISHER (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE ALBIN did not participate.

---

[6] In light of our holding, we do not decide whether a contract that results from the unauthorized practice of law is void or voidable.